CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 15, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ M. Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

| | | |
|---|---|---|
| **CLIFFORD WAYNE WOOD, III,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 3:24cv00051** |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **CHADWICK DOTSON,** | ) | **By: Robert S. Ballou** |
| **Respondent.** | ) | **United States District Judge** |

Clifford Wayne Wood, III, by counsel, has filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his 2019 murder and firearm convictions in Louisa County Circuit Court. The respondent has filed a Motion to Dismiss, to which Wood has responded. Having reviewed the transcripts, state court records, and the briefs of the parties, the matter is ripe for decision. Finding Wood's claims procedurally defaulted, I must grant the motion.

## I. Background

### A. Factual Background

In the light most favorable to the Commonwealth, the prevailing party at trial, the Virginia Court of Appeals summarized the facts of the case as follows:

> Sandy Collins had been in a "sexual relationship" with [Wood] for about two months when she learned that "he was married." On August 31, 2017, Collins told [Wood] that she wanted to end their relationship. Later that day, several of Collins' friends visited her house, including Tony Payton, Tasha Coles, and Sean Houchens. A few hours later, [Wood] started "beating" on Collins' front door. When Collins opened the door, [Wood] walked inside and demanded that Payton repay a $20.00 debt. Payton gave [Wood] the money, and Collins "put [her] hand on [Wood's] shoulder" to guide him to the door. [Wood], however, "shoved" Collins "against the door" and used a racial slur to refer to her guests. After leaving, [Wood] sent Collins several text messages, which stated, "U nasty lost all my respect," "Nasty whore," and other texts that used racial slurs about her friends.

A few hours after that encounter, [Wood] returned to Collins' house and "was beating . . . the door again." When Houchens opened the door, [Wood] produced a gun and "put" it on Houchens' chest. Houchens walked toward [Wood], backing him away from the house. After Collins walked outside, [Wood] left.

Around 1:30 a.m., [Wood] returned to Collins' house a third time, resumed "beating . . . the door," and broke a window next to the door. When [Wood] stopped hitting the door, Houchens walked outside to "make sure that [Wood] wasn't busting" the car windows. Collins peered out of her bedroom window and saw Houchens walk down the porch steps while [Wood] walked towards him. [Wood] "pulled a gun," and Collins heard four gunshots. Collins could not see Houchens when she heard the gunshots. Collins admitted that she had used cocaine earlier that evening and had not disclosed that information to the police. She also did not tell the police that she had "actually [seen] (brackets in original) the shooting" until August 2018.

**********

Hugh Wilson, an Emergency Medical Technician, found Houchens lying on the ground. He had five penetrating gunshot wounds: one on his right arm, one on the right side of his chest, and three on the right side of his abdomen. Wilson secured Houchens' airway and transported him to a "medical helicopter"; Wilson did not see any firearms in Houchens' hands or on the ground near his body. At the hospital, Houchens' "injuries were deemed un-survivable," and he "was declared deceased at 3:45 a.m." The cause of death was "gunshot wounds to [the] (brackets in original) torso." At 4:45 a.m., [Wood] actually texted Collins again, using a racial slur.

**********

[Wood], a convicted felon, testified that Houchens had been his cocaine supplier. Every Friday, Houchins "front[ed]" [Wood] "five hundred dollars worth of cocaine"; [Wood] sold the cocaine and gave the money to Houchens the following Friday. [Wood] kept some of the cocaine "on the side" to support his habit. [Wood] testified that he had been "robbed" of the cocaine about two weeks before the shooting, so he could not give Houchens the money that he owed him.

[Wood] testified that on the night of the shooting he had visited Collins while Houchens was there. [Wood] sat on the sofa, "took a hit of" cocaine, and gave Houchens $100 of the $500 that he owed.

> [Wood] said that he left the house and that Houchens followed him onto the porch, demanding the rest of the money. [Wood] claimed that Houchens "bumped" his chest against [Wood], causing [Wood] to fall down the stairs, break Collins' window, and cut his arm. [Wood] claimed that Houchens punched him in the mouth and said, "I want my fucking money," and, "I'll kill you." [Wood] testified that Houchens had a gun in his hand, so [Wood] shot Houchens four times. [Wood] then drove to a cornfield and threw his gun out of the car window." [Wood] claimed that he had fled the Commonwealth because he "was scared" and "panicked." Nevertheless, he testified that he was "getting ready" to "turn [himself] (brackets in original) in" before the police arrested him.

Dkt. No. 13-4 at 2–4 (footnotes omitted). Three other witnesses to portions of the shooting also testified, Tasha Miller, Joanna Maddox, and Jeri Riddick (next-door neighbor).

**B. Procedural Background**

After previous indictments arising from the case were dismissed by order of *nolle prosequi*,[1] on July 9, 2018, the grand jury sitting for Louisa County indicted Wood for first degree murder in violation of Va. Code § 18.2-32 and use of a firearm in the commission of murder in violation of Va. Code § 18.2-53.1. Following trial by jury on January 10-11, 2019, he was found guilty of both charges. The jury recommended a life sentence for first degree murder and the mandatory three-year sentence for use of a firearm. The trial court then ordered a presentence report.

Wood filed a motion to set aside the verdict, alleging insufficiency of the evidence and juror misconduct. The motion was denied on May 30, 2019, following a four-hour hearing. The court held a sentencing hearing on June 1, 2019, and imposed the sentence recommended by the jury. The final judgment order was entered on August 5, 2019.

[1] The Latin phrase "nolle prosequi," refers to the Commonwealth's decision to dismiss the charges without prejudice to the right to refile the charges against the defendant.

Wood appealed his convictions, arguing that the evidence was insufficient to support his convictions and that the trial court erred in denying the motion to set aside the verdict due to juror misconduct. The Court of Appeals denied the appeal in a *per curiam* opinion on September 8, 2020. His further appeal was procedurally dismissed by the Supreme Court of Virginia on February 16, 2021, because counsel failed to file the notice of appeal in the Court of Appeals. Wood requested and was granted a delayed appeal to the Supreme Court of Virginia, but after reviewing the petition and the record, the Court ultimately refused the petition on April 4, 2023. Dkt. No. 13-7 at 34. He did not file a petition for *certiorari* with the United States Supreme Court.

After his sentencing hearing, on July 20, 2019, Wood filed a *pro se* petition for state habeas relief in the Louisa County Circuit Court, alleging that the Commonwealth Attorney had removed two jurors because they had previously served on juries that ended in a mistrial and one juror for ethnicity. Wood also raised the following ineffective assistance of counsel claims:

1. Counsel failed to file a motion for discovery.
2. Counsel only met with petitioner at the jail three times and did not establish a defense.
3. Counsel did not make Wood aware of the jury selection process and did not include him in jury selection decisions.
4. Counsel never questioned nine of the twelve jurors ultimately selected for the panel.
5. Counsel never asked Wood what he remembered about the night of the incident.
6. Counsel never brought forward any witnesses in Wood's defense.
7. Counsel never objected to anything the Louisa County Commonwealth Attorney said or did.

8. Counsel only cross-examined one witness.
9. Counsel did not subpoena Wood's phone records, even though Wood advised him that they were "needed for evidence."
10. Counsel was so ineffective that after a two-day trial, the jury only deliberated for 10 minutes.

On September 26, 2019, the trial court entered an opinion and order denying and dismissing the petition. Dkt. No. 13-10. Wood did not appeal.

Counsel timely filed the current federal petition on July 3, 2024, raising the following two claims for ineffective assistance of counsel:

1. Trial counsel failed to call either Brandon Wood or Stephen Phillips, his alibi witnesses, to testify and failed to present their prior testimony from Wood's bond hearing.
2. Trial counsel failed to object to Sandy Collins' highly prejudicial and irrelevant testimony regarding Wood's use of the N-word and of his marital infidelity.

## II. Standard of Review and Limitations on Federal Habeas

A federal court may grant habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Further, any factual determination made by a state court "shall be presumed to be correct,"

and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e). A federal district court reviewing a § 2254(a) petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The standard of review and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 730−31 (1991). When reviewing a state court's assessment of an ineffective assistance of counsel claim, federal review is "doubly deferential," because the deferential standard of review under the statute overlaps with the deferential standard under *Strickland v. Washington*, 466 U.S. 668 (1984). *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). In other words, the federal court is to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013).

**A. Exhaustion**

A habeas petitioner is required to exhaust his claims in state court before his claims can be considered in federal court. 28 U.S.C. § 2254(b)(1)(A). To exhaust his claims, a petitioner must present his federal constitutional claims to the highest state court, on the merits, before he is entitled to seek federal habeas relief. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). If a petitioner still has the right to pursue a state remedy by any available procedure, he has not exhausted his claim. 28 U.S.C. § 2254(c). Further, the petitioner must present to the state court the same operative facts and the same controlling legal principles that he seeks to present to the federal court. *Duncan v. Henry*, 513 U.S. 364, 365−66 (1995). Failure to do so "deprive[s] the

state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 732.

**B. Procedural Default**

A separate but closely related issue is the doctrine of procedural default. If a state court has clearly and explicitly denied a petitioner's claim based on a state procedural rule that provides an independent and adequate ground for the state court's decision, that claim is procedurally defaulted for purposes of federal habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A state procedural rule is independent if it does not depend on a federal constitutional ruling, and it is adequate if it is firmly established and regularly applied by the state court. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998). A claim that has not been presented to the highest state court and would be procedurally barred as untimely or successive if the petitioner tried to present the issue to the state court now is considered simultaneously exhausted and defaulted. *Bassette v. Thompson*, 915 F.2d 932, 936–37 (4th Cir. 1990).

**C. Overcoming Procedural Default**

Before a federal habeas court will consider a procedurally defaulted claim, the prisoner must show both cause for the default and actual prejudice as a result of the claimed federal violation. *Coleman*, 501 U.S. at 750. Cause for procedural default requires the existence of some objective factor, external to the defense and not fairly attributable to the prisoner. *Id.* at 756–57. To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

## III. Discussion

Wood failed to properly exhaust his state claims for ineffective assistance of counsel. First, in the state habeas proceeding, the claims most closely related to the claims in this petition did not provide the same operative facts for the state court to consider. The claim that his attorney "never brought forward any witnesses" on Wood's behalf (which was not accurate) is not the same as saying his attorney never called Brandon Wood and Stephen Phillips as essential witnesses to self-defense. A properly exhausted claim must provide the same operative facts to the state court. *Duncan*, 513 U.S. at 365−66. Likewise, "counsel never objected to anything" is so broad that it is practically meaningless, compared to the current claim, that counsel failed to object to the testimony of Sandy Collins regarding Wood's infidelity and Wood's use of the N-word. The state habeas court never had the opportunity to address the particular issues raised in this petition. Nor can Wood raise the issues in another state habeas petition because Virginia does not allow second or subsequent petitions. Va. Code § 8.01-654(B)(2).

Wood complicated his habeas position further by failing to appeal the initial habeas decision to the Supreme Court of Virginia. He filed neither a Notice of Appeal nor a Petition for Appeal. Therefore, even if he had presented more precisely tailored claims to the circuit court in his state habeas petition, it would be for naught. Virginia Supreme Court Rule 5:9(a) provides that a Notice of Appeal must be filed within 30 days from the date of the judgment appealed from. Failure to comply with the rule has long been recognized as an independent and adequate ground for dismissing a habeas appeal, rendering its issues procedurally defaulted. *Coleman*, 501 U.S. at 740.

To overcome procedural default, a petitioner must show both cause and prejudice, as discussed in the previous section. Wood argues that he is relieved of this burden by *Martinez v.*

*Ryan*, 566 U.S. 1 (2012). *Martinez* recognized a narrow exception to procedurally defaulted claims of ineffective assistance of counsel. The exception applies if (1) ineffective assistance claims can be raised for the first time only in collateral review proceedings and not on direct appeal; (2) the petitioner had no counsel in the initial state collateral review proceedings (or counsel was ineffective within the meaning of *Strickland*), and (3) the defaulted ineffective assistance claim is substantial. *Owens v. Stirling*, 967 F.3d 396, 422 (4th Cir. 2020). The Court in *Martinez* emphasized that its holding "does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." *Martinez*, 566 U.S. at 16. Virginia is a state that first permits ineffective assistance of counsel claims only in post-conviction review. *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001). Wood did not have counsel at his initial state habeas proceeding. We need not decide the third prong of the *Martinez* test, however, because the initial habeas proceeding ended when the Louisa County Circuit Court entered its decision denying habeas relief on April 4, 2023. The failure to appeal occurred after the initial proceeding ended and, therefore, is not covered by *Martinez*. *Mahdi v. Stirling*, 20 F.4th 846, 893 (4th Cir. 2021); *Burke v. Clarke*, No. 7:13CV00380, 2016 WL 558603, at *6 (W.D. Va. Feb. 8, 2016) (J. Conrad); *Bennett v. Warden*, 7:14cv00222, 2015 WL 1000749, at *4 (W.D. Va. March 6, 2015) (J. Urbanski).

Because *Martinez* provides no escape route for procedural default by failing to appeal, I must return to the original cause and prejudice test. Other than lack of counsel, Wood has offered no cause for his failure to appeal the state habeas decision to the state's Supreme Court. There is no right to counsel in state habeas proceedings, so lack of counsel by itself cannot be good cause for procedural default. *Coleman*, 501 U.S. at 752. A *pro se* petitioner's ignorance of the law is not recognized as good cause, either. *United States v. Cowley*, 814 F.3d 691, 699 (4th

Cir. 2016). Wood has not shown cause for failing to appeal his claims to the Supreme Court of Virginia. This alone warrants dismissal of the current petition.

Neither has Wood shown prejudice, that the alleged ineffective assistance infected "his entire trial with error of constitutional dimensions." *Frady,* 456 U.S. at 170. Wood cannot establish such prejudice because his claims of ineffective assistance are without merit. When reviewing counsel's performance, courts apply a highly deferential standard. A petitioner must show that (1) counsel's performance was so deficient that he was not functioning as counsel guaranteed by the Sixth Amendment *and* (2) that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must meet both prongs of the test. Wood has not established deficient performance on either claim.

Deficient performance requires a showing that counsel's performance fell below "an objective standard of reasonableness . . . under prevailing professional norms." *Id.* at 688. The reviewing court must not rely upon "the distorting effects of hindsight," but must indulge a strong presumption that counsel's decisions and actions fell within the wide range of reasonable strategy decisions. *Id*. at 689–90. Wood's first claim is that counsel was ineffective for failing to call Brandon Wood and Stephen Phillips to testify that Wood was acting in self defense (as they testified at Wood's bond hearing). The decision regarding which witnesses to call for trial is a question of trial strategy which the court presumes to be sound; the petitioner must overcome this presumption. *Almon v. United States*, 302 F. Supp. 2d 575, 586 (D.S.C. 2004). In an effort to meet this burden, counsel states in his Petition that Brandon Wood and Stephen Phillips both testified under oath at Wood's bond hearing:

> Brandon Wood . . . testified that he was present at the killing of Houchens. Brandon Wood testified that Houchens was the aggressor and that his father Clifford Wood only shot Houchens after

> Houchens attempted to pull out what looked like a silver or chrome pistol and shoot Clifford Wood.
>
> Stephen Phillips likewise testified . . . that Clifford Wood shot Houchens only in self-defense after Houchens pulled out a gun.

Pet., ¶¶ 13–14.

The Petition later states that Wood's trial counsel met with Brandon Wood, "who was also charged with crimes," and with Brandon's attorney, who would testify that she advised Brandon not to testify or to take the Fifth Amendment because of his own pending charges,[2] but that despite her advice, Brandon agreed to testify for his father. Neither Brandon Wood nor Phillips were subpoenaed to trial. Petitioner has not provided a transcript of the bond hearing testimony or an affidavit from either Brandon Wood or Stephen Phillips, nor has he provided a more fulsome summary of what Phillips' testimony would be. Respondent submitted an affidavit from Russell McGuire, the Commonwealth Attorney who prosecuted the case, advising that he had provided information in discovery to Wood's trial counsel about prior inconsistent statements from Phillips and Phillips' admission that he perjured himself at the bond hearing.[3] Dkt. No. 13-13. Taking all this into consideration, I cannot find that trial counsel's performance was deficient.

Wood's second claim of ineffective assistance fares no better. He alleges that counsel was ineffective for failing to object to Collins' testimony about Wood's marital infidelity and to her reading the text messages he sent to her during the evening of the incident, which included Wood's use of racial slurs. Woods argues that such testimony was highly prejudicial. "However,

---

[2] At the time, Brandon Wood was also under indictment for the murder of Houchens; he later pled guilty to accessory after the fact to first degree murder. Virginia Courts Case Information System. After Petitioner Wood's trial, but before his sentencing, Brandon was also charged with perjury for his bond hearing testimony, which he later pled guilty to. Dkt. No. 13-12 at 4–6.

[3] Phillips also later pled guilty to a perjury charge for his bond hearing testimony. Dkt. No. 13-12 at 1–3.

the mere fact that evidence is highly prejudicial to a party's claim or defense is not a proper consideration . . . Rather, a trial court must determine whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects." *Butler v. Stegmaier*, 884 S.E.2d 806, 813 (Va. Ct. App. 2023). That Collins had ended her relationship with Wood *that very day* upon finding out that he was married was highly relevant to his state of mind, as was the inflammatory nature of his text messages to Collins when he became upset that Houchens and others were guests in her home. It is unlikely that the trial court would have sustained objections, and there was the risk of drawing the jury's attention to the negative information by objecting. What evidentiary objections to raise typically fall within the scope of strategy decisions for the attorney to make at trial. *Gonzalez v. United States*, 553 U.S. 242, 248 (2008). An attorney's performance is not deficient when he chooses not to make a frivolous objection. *United States v. Mason*, 774 F.3d 824, 833 (4th Cir. 2014); *Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010).

Because I find there was no deficient performance, there can be no prejudice arising from Wood's procedural default of his claims.

## IV. CONCLUSION

For the reasons stated, Wood's habeas claims are simultaneously exhausted and defaulted. He has failed to establish good cause for his procedural default, nor has he shown any prejudice. I will dismiss his Petition. A separate order will be entered this day.

Enter: September 14, 2026

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge